PATRICK PORTWOOD v. THE STATE.

No. 2619. Decided October 22, 1913.

**1.—Perjury—Disjunctive—Charge of Court.**

Where the indictment charged defendant with swearing falsely before the grand jury that he had not bet at a game played with dice with certain parties named and other persons, and the court charged the jury that if defendant had bet with said parties or any other persons, he would be guilty, there was no reversible error. Davidson, Judge, dissenting.

**2.—Same—Assignment of Perjury—Charge of Court.**

Where, upon trial of perjury, the evidence sharply presented the issues whether defendant was asked before the grand jury if he did not play at the particular game of dice alleged in the indictment, and that he had not been asked to testify about any particular game with the parties mentioned, but only generally, the court's failure to instruct upon this phase of the evidence as requested was reversible error. Following Simms v. State, 67 Texas Crim. Rep., 98.

**3.—Same—Rule Stated—Defensive Theory—Charge of Court.**

A defendant is entitled to a distinct and affirmative, not merely an implied or negative, presentation of the issues which arise upon his evidence.

**4.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

Where, upon trial of perjury, the jury, in their retirement before they reached a verdict, alluded to defendant's failure to testify, the same was reversible error. Following Walling v. State, 59 Texas Crim. Rep., 279, and other cases.

**5.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded upon other grounds, the overruling of the motion for continuance need not be discussed.

**6.—Same—Evidence—Allegations and Proof—Value.**

Where, upon trial of perjury, the indictment alleged that it was a material inquiry before the grand jury whether defendant bet at a certain game played with dice, the evidence should show that something of value was bet, as it is no offense to bet at a game unless something of value is bet. See opinion pointing out how evidence may be strengthened.

Appeal from the District Court of Hopkins. Tried below before the Hon. Wm. Pierson.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*H. C. Connor* and *Crosby, Hamilton & Harrell,* for appellant.—On question of court's charge in using the disjunctive, and not properly submitting the assignment of perjury alleged in the indictment: Donohoc v. State, 14 Texas Crim. App., 638; Maddox v. State, 28 id., 533; Leverette v. State, 32 Texas Crim. Rep., 471; Buller v. State, 33 id., 551.

On question of the court's failure to charge the jury to acquit defendant unless they believed that he swore before the grand jury as alleged in the indictment: Simms v. State, 67 Texas Crim. Rep., 98, 148 S. W. Rep., 786; Davis v. State, 63 Texas Crim. Rep., 484, 141 S. W. Rep., 93.

On question of misconduct of jury in discussing defendant's failure to testify: Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624.

*C. E. Lane,* Assistant Attorney-General, for the State. Cited cases in opinion.

DAVIDSON, JUDGE.—Appellant was convicted of perjury, and was given two years in the penitentiary.

The indictment charges the perjury as having been committed before the grand jury. It is alleged that it was material inquiry before that body whether appellant bet at a game played with dice "with Claude Day, Jeff Dickson *and* others on a branch near the home of defendant on or about the 4th day of December, 1911." That appellant testified in substance and in effect that "he did not bet at a game played with dice with Claude Day, Jeff Dickson or any other person, on the branch near his home in Hopkins County on *or* about the 4th day of December, 1911, or at any other time." The traverse in the indictment is as follows: "Whereas, in truth and in fact, as he, the said Patrick Portwood, then and there well knew, he, the said Patrick Portwood, did unlawfully bet at a game played with dice, with Claude Day, Jeff Dickson *and* other persons, on the branch near his home, in Hopkins County, Texas, on or about the 4th day of December, 1911, and which said statement so made by the said Patrick Portwood before and to said grand jury was wilfully and deliberately made, and was wilfully and deliberately false, as he, the said Patrick Portwood, then and there well knew."

It was necessary for the State to prove by two credible witnesses, or one credible witness strongly corroborated by other testimony, that appellant did bet at a game played with dice, with Claude Day, Jeff Dickson and others, on the branch near his home in Hopkins County, Texas, on or about the 4th day of December, 1911. Unless this was shown by the necessary quantum of proof appellant would not be guilty of the assigned perjury. It is not the law that he could be convicted by showing other facts and circumstances tending to show he may have committed perjury in some other manner or about some other matter. The court charged the jury that appellant would be guilty if the jury should believe that appellant testified before the grand jury that he had not bet with Claude Day, Jeff Dickson, *or* any other person, at a game played with dice, on the branch near his home in Hopkins County, Texas, on or about the 4th day of December, 1911. Proper exceptions were taken to this charge on the ground, among other things, that it did not submit the inquiry before the grand jury and the allegations in the indictment. The indictment had charged him with swearing falsely in testifying that he had not bet at a game played with dice with Claude Day, Jeff Dickson *and* other persons. The court instructed the jury that if he had bet with Claude Day, Jeff Dickson *or* any other person he would be guilty. We think this exception was well taken. The court should have submitted the assigned perjury which charged him with betting at the game of dice played with Claude Day, Jeff Dickson and other persons. Upon another trial the court should submit the issues set forth in the indictment. My brethren think there is no error in the above matter. Hutcherson v. State, 33 Texas Crim. Rep., 67. The writer's views are above expressed.

It is a right serious question as to whether or not the State proved its case by the necessary quantum of proof, that is, by two witnesses, or by one witness strongly corroborated to the effect that appellant did bet at the time and place mentioned, and upon which the perjury is assigned; and it is also a serious question under the evidence as to whether he was asked by the grand jury as to whether or not he bet at this particular game. The evidence is in serious conflict, to say the least of it, that the grand jury did not ask about this particular case, and there is quite a lot of evidence coming from the members of the grand jury themselves that he was not asked about any particular game, or the parties engaged in it.

For the State, Jeff Dickson testified: "I know the defendant, Patrick Portwook. I have played craps with him on a little branch about two hundred yards from his house; that was in 1911, about the 4th day of December; several of us were in that game. Patrick Portwood played in that game, and he bet in that game; that was in 1911, in Hopkins County, Texas." It will be noticed this witness said they played craps. He does not state that they played any game played with dice, but conceding that the game of craps is played with dice, this is rather a loose

way of putting the case when evidence could have been elicited to show the fact. The conclusion is left to inference.

Sam Figures testified for the State: "I know the defendant, Patrick Portwood. I have shot craps in a game when Patrick Portwood was present in the game; it was out here on North Caney near Patrick Portwood's house on a branch; it has been so long now that it is hard for me to remember who was in that game; Claude Day and Jeff Dickson were in it. I think it was on Sunday; it was about the third Sunday in December, I suppose; it may have been about the 4th of December; it was in December; that was the only crap game I was ever in on that branch in December. Patrick Portwood was there present, I think, at the time the game was played. I could not say whether he was in the game or not—whether he was shooting or not—but he was there. I could not say for sure whether he shot craps at the time because I wasn't paying much attention, because I was like other people—playing for the 'mon.' I did not shoot with him at that time. If he bet money at that time on that game I don't remember; the one I was most betting with was Mr. Day; he was the man that had the bulk of the money."

Henry Pharr testified for the State: "In August, 1912, I was acting in the capacity of assistant county attorney. I attended the Justice Courts. I was out at Mr. Lee's court, the Eighth precinct, along in August representing the State on some gaming cases, one of them being against Patrick Portwood. I had a conversation with him at that time in regard to a case pending at that time against him. I had a conversation with the negro in regard to a crap game that was played on the branch near his house about the 4th day of December, 1911; he said he played in that game at that time and place."

Henry Lee testified: "During the year 1912 and up to that time I held the official position as justice of the peace of the Eighth precinct in Hopkins County. This book handed me is the docket of my precinct. I made the entries in this case on page 172 myself,—No. 2137, State of Texas v. Patrick Portwood; those entries are true and correct. I suppose Mr. Briggs has the complaint and other papers. I drew these papers that are handed me; they are the papers in the Patrick Portwood gaming case; they were before me when I was justice of the peace. This judgment and entry here is based upon these papers. Patrick Portwood entered his plea of guilty to this charge of gaming, as shown by this docket. When I called Patrick Portwood's case he claimed he wasn't there (meaning at the game); I think he claimed he was at Cooper. I asked him what he was going to do about his case, and he coughed around a little, and finally he said, 'I will just give you the $19.80.' He did not say anything at that time about whether he was down there in that game that day; I told him he would not give us anything; I told him that because he was a negro we didn't want his money, but I told him if he was in the crap game, and if we got evidence enough to show it we were going to get some of it, and finally Patrick

said he was down there that evening and he paid it off." This is practically the State's case.

S. G. Smith, a member of the grand jury, testified: "I remember what the defendant was interrogated about when he was before the grand jury; he was interrogated about gaming; he said he didn't know of any game at all being played in his community by him or anybody else. I don't think he was asked about any game with any particular person."

A. J. Titus, foreman of the grand jury, testified for the State as follows: "I don't remember whether he was asked anything about who was in the game; I don't remember whether he was asked as to the date."

Willis Brant, another member of the grand jury, testified as follows: "We had Patrick Portwood before that grand jury as a witness. He was there and we didn't know what he was sent for, and nobody on the grand jury knew what he was a witness for, and we had him in there and asked him who summoned him and he said Mr. Teer summoned him, and we told him to stand aside until Mr. Teer come in and we would find out what he summoned him for, and that evening before adjourning George Teer hadn't returned and we brought Patrick Portwood back and questioned him right sharply again, and he said he hadn't done anything, and we didn't know what he had done so we dismissed him. Q. Do you know whether or not you asked him if he didn't bet at a game played with dice with Jeff Dickson and Claude Day? A. We asked him if he hadn't played; we know darkies all play and we had a suspicion; we just asked him about gaming or if he knowed of any; we didn't call his attention to any particular game, just asked him if he hadn't been gaming. George Teer wasn't there; when George came he wanted to know what he told and we said he didn't tell anything, he was gone." On cross-examination he said: "I didn't hear Mr. Sweeton or Mr. Titus ask Patrick Portwood anything about playing a game with Dickson; as I said, there were no names called, because we knew nothing, and we had no foundation to work on; he was sent there and we didn't know what he was sent for." This is a sufficient quotation from the record to show the two issues presented.

The court's charge is attacked because it failed to submit the issues raised by the evidence, and failed to instruct the jury that they should acquit the defendant unless they believed that he swore before the grand jury that he did not bet at the game played with dice at the time and place alleged with Claude Day and Jeff Dickson and others, and in failing to further instruct them that if they had a reasonable doubt as to whether he so testified they should acquit, and in failing to instruct the jury to acquit the defendant unless they believed he bet at a game played with dice, with the said Claude Day and Jeff Dickson. These issues were raised by the testimony of S. G. Smith, A. J. Titus and Willis Brant, who were members of the grand jury. Said Smith and Brant both testified that the defendant was not questioned as to whether he bet at a game played with dice, and that he only testified before the

grand jury that he did not play at any game. And the witness Titus testified that defendant was only asked if he knew of any gaming on the branch near his house, and that he was not asked anything about a game with Claude Day and Jeff Dickson at any time, and the witness Titus did not testify that defendant was questioned concerning any game played with dice, and each of said witnesses testified that defendant's attention was not called to a game played with dice with Claude Day and Jeff Dickson, and that he was simply questioned about gaming generally. And defendant requested special instructions submitting said issues to the jury, which were refused by the court. Appellant requested the following charge: "The defendant is charged with falsely testifying before the grand jury in substance and effect that he did not bet at a game played with dice with Claude Day and Jeff Dickson or any other person on the branch near his home in Hopkins County, Texas, on or about the 4th day of December, 1911. The burden of proof is upon the State to prove the alleged false statement beyond a reasonable doubt, and unless you believe beyond a reasonable doubt that the State has done so, you will acquit the defendant." The further charge was also asked: "If you believe the defendant swore falsely before the grand jury that he did not know of any gaming; or that he hadn't played at any game or that he hadn't played at a game with dice on the branch near his home; or that he hadn't played at a game with Claude Day, Jeff Dickson, or any other person, and you further believe said testimony was false, you would not be authorized to convict him unless you further believe beyond a reasonable doubt that the defendant also testified before said grand jury that he did not bet at a game played with Claude Day and Jeff Dickson on the branch near his home in Hopkins County, Texas, on or about the 4th day of December, 1911." The court was further requested to instruct the jury: "If you believe from the evidence that the defendant swore falsely before the grand jury, still you will not be authorized to return a verdict of guilty unless you further believe beyond a reasonable doubt that the false statement, if any, was substantially the same as set out in the indictment."

It will be seen that the issues are sharply drawn. Enough of the testimony has been stated to show that there were two issues presented by the facts: one that he was asked before the grand jury if he did not play at this particular game with Claude Day, Jeff Dickson and others on the branch near his, appellant's, house, on the 4th day of December, 1911; the other that he was not asked particularly about any game, and did not, therefore, testify about any particular game; and further, therefore, that he did not testify that he did not bet at a game played with the parties mentioned. It is too well settled now for discussion, that the accused is entitled to an affirmative presentation of his theories of the case, or any theory favorable to him presented by the evidence. The court did not submit the issue and refused to give the requested instructions authorizing the jury to acquit, from the standpoint that he was not asked about this particular game and, therefore, did not swear falsely

about the matter. If he was not asked about this particular game at the time and place mentioned, but just asked generally about gaming, the jury would not be authorized to convict under the latter theory. The indictment had not so charged, and some of the evidence is to the effect that he was not asked about that game, but just asked generally. The court was in error in not so instructing, and was in error in refusing the requested instructions. See Simms v. State, 67 Texas Crim. Rep., 98, 148 S. W. Rep., 786. In that case Judge Harper said: "We thoroughly agree with defendant that it is the law of this State, and mandatory on the court, to charge on every theory of defense brought out by the testimony, so it is useless to discuss the authorities cited by appellant." It would, therefore, follow that the court should have instructed the jury that if the defendant swore falsely in that he did not know of any gaming, yet if his attention was not called to the particular game upon which the perjury is assigned, he could not be convicted under this indictment. See also Davis v. State, 63 Texas Crim. Rep., 484, 141 S. W. Rep., 93. In the Davis case Judge Prendergast, speaking for the court, said: "There is an unbroken line of decisions of this court which hold, in effect, that a defendant is entitled to a distinct and affirmative and not merely an implied or negative presentation of the issues which arise upon his evidence, in order to prevent the jury from ignoring his defenses and to conduct them to a proper verdict if they find his evidence to be true where such issues are specially requested by special charges of the appellant on the trial."

Another question is presented: The jury after their retirement discussed the failure of the defendant to testify. This is shown by the affidavit of T. B. Summers, who, in effect, states when the jury first retired to consider their verdict, on the first ballot they stood five for conviction and six for acquittal, and stood that way for some time; that during their deliberations and before they reached a verdict, and while some of the jurors were for acquittal, the exact number affiant can not state, some member of the jury spoke up and said that if the defendant was not guilty he did not see why they did not put him on and prove it, and two or three other members of the jury said, "That is what I say"; said statements were spoken loud enough for all of the jurors to have heard it. Affiant is unable to state just when this occurred, but it was before they reached a verdict, and while some of the jurors were for acquittal. That after this discussion of the defendant's failure to testify just how long, affiant is unable to state, the jury returned a verdict of guilty. This may not occur upon another trial, but is sufficient to reverse this judgment. See Walling v. State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624; Will Robbins v. State, from Robertson County, decided at the recent term of this court. Summers' affidavit stands unimpeached and uncontroverted. The writer does not care to discuss this question. The authorities in addition to those two cited, as well as the statute, prohibits the discussion of the failure of a defendant to testify.

Appellant presented an application for a continuance, which was overruled. It is not deemed necessary to discuss that matter as it may not occur upon another trial.

Appellant seriously attacks the sufficiency of the evidence. Inasmuch as the judgment is reversed upon other questions we will not now decide that issue. But we desire to say this testimony might have been strengthened evidently as shown by the record; for instance, if appellant bet at the game, in order to make him guilty of a violation of the law he would have to bet something of value. We can only arrive at the fact that something of value was bet by the use of the expression by the witnesses that defendant bet at the game. That would be but an inference, when, if as a matter of fact he did bet at the game, the witness who testified that he did so bet could have readily testified what he bet. It is not an offense to bet at a game unless something of value is bet, and, therefore, it would not be a violation of the law. While this may not be reversible error, yet the facts ought to be more explicit. The grand jury are not authorized to investigate anything but violations of the law. We mention this simply to show the loose manner in which this case was tried on the facts.

There are other questions of more or less weakness that might be strengthened upon another trial if appellant was in fact guilty. If appellant is guilty this case can be made much clearer upon another trial.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*